# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT CINCINNATI

UGBE OJILE,

<table>
<tr><td></td><td>Petitioner,</td><td>:</td><td>Case No. 1:13-cv-844</td></tr>
<tr><td>- vs -</td><td></td><td></td><td>District Judge Michael R. Barrett<br>Magistrate Judge Michael R. Merz</td></tr>
</table>

MICK R. OPPY, WARDEN,
  Correctional Reception Center,

                                               :

                 Respondent.

## SUPPLEMENTAL REPORT AND RECOMMENDATIONS

This habeas corpus case is before the Court on Petitioner's Objections (ECF No. 24) to the Magistrate Judge's Report and Recommendations recommending the Petition be dismissed with prejudice (ECF No. 19).  District Judge Barrett has recommitted the case for reconsideration in light of the Objections (Recommittal Order, ECF No. 25).

The case was brought *pro se* by Petitioner Ugbe Ojile to obtain relief from his conviction at a bench trial in the Common Pleas Court of Hamilton County, Ohio, on various robbery related charges and the consequent twenty-five year sentence.  He pleads the following grounds for relief:

> **Ground One:**   Ojile's convictions are based on insufficient evidence.
>
> **Supporting Facts:**  Ojile was convicted on all counts when the evidence was insufficient as a matter of law to sustain the conviction.
>
> **Ground Two:**  Ineffective assistance of counsel

1

**Supporting Facts:**

A) Failure of trial counsel to secure the testimony of Ojile's alibi witness to explain documented flight records she sent in which would have verified Ojile's alibi information.

B) Failure of trial counsel to introduce evidence in his possession marked "for counsel only" that proved it was physically impossible for Ojile to have committed the robbery on Danielle Duncan on Counts 12 of B1007149.

C) Failure of trial counsel to suppress statements Ojile allegedly made to "jailhouse informant"', Tyrone Tanks, that was obtained in violation of Ojile's 6th Amendment right to counsel.

**Ground Three:**  Due process violation in use of impermissible suggestive identification procedure.

**Supporting Facts:**  Prosecutor presented single photograph of defendants to victim two weeks before trial stating "These are the guys up for trial". Prior to that, there was no prior line-up presented to victim.

Prosecutors action represented state action, and the resulting in-court identification during trial via tele-video hook-up (while Ojile and Erkins were in handcuffs and the only the black males in the entire room), became the sole evidence used to convict Ojile on Count 11 of B1007149 with absolutely no other supporting or corroborating evidence.

**Ground Four:**  Due process violation when prosecutor withheld evidence that formed the basis of state's case (*Brady* violation).

**Supporting Facts:**  Prosecutor secretly showed single photograph of defendant to victim two weeks before trial stating, "These are the guys up for trial" and failed to notify and hand over those pictures to defense counsel. This action denied defendants an opportunity to file a motion to suppress that identification which would have been successful based on prosecutor's prior actions. The resulting in-court identification was the sole evidence used to convict Ojile on Count 11 of B1007149, with no supporting evidence.

**Ground Five:**  Ojile's due process rights as guaranteed by the Fifth and Fourteenth Amendments of the United States

Constitution was [sic] violated by prosecutor's knowing use of perjured testimony.

**Supporting Facts:** Prosecutor knowingly introduced perjured testimony, failed to correct the testimony, and relied on this testimony in closing arguments to gain a conviction. Prosecutor introduced testimony from two key witnesses, Amy Hoover and Tyrone Tanks, to place Ojile at three different robberies when information was verified to the state by the FBI, that shows Ojile was in jail in Illinois when two of the robbery's [sic] occurred, and information was verified on the third robbery from an affidavit from the custodian of records for Continental Airlines that proved he was not in Ohio, and it was physically impossible for Ojile to have committed the robbery.

**Ground Six**: Ojile's due process rights as guaranteed by the Fifth and Fourteenth Amendments of the United States Constitution was [sic] violated when Ojile was convicted and sentenced to a crime that he was never charged with (count 26 of B-1007149C).

**Supporting Facts:** Ojile was denied his due process of law in violation of the 5th and 14th Amendments to the United States Constitution when he was convicted on a "Conspiracy to commit aggravated robbery", but was indicted for Aggravated Robbery on Counts 26 of B1007149.

**Ground Seven:** Ojile was denied his Sixth Amendment right to confrontation.

**Supporting Facts:** Ojile was denied his right to Confrontation guaranteed by the 6th Amendment, when officer Gregory Morgan who allegedly recovered incriminating evidence from a search of residence did not testify at trial; and upon defense objection officer Bill Crock who didn't personally observe the recovery of these items was allowed to introduce items into evidence; and then that evidence was the sole evidence used to convict Ojile with no other supporting or corroborating evidence.

**Ground Eight:** Ojile was denied his Sixth Amendment right to counsel.

**Supporting Facts:** Ojile's Sixth Amendment Right to Counsel was violated when the state intentionally placed him in the same cell as jailhouse informant Tyrone Tanks, for Tanks to deliberately elicit incriminating information after Ojile was already indicted on charges, knowing that Tanks would be testifying for the state at

Ojile's trial, and Tanks testifies as a key witness in the state's case in chief.

**Ground Nine:** Ojile was denied of [sic] his Sixth Amendment right to a fast and speedy trial.

**Supporting Facts:** Ojile was denied his 6th and 14th Amendment Right to a Fast & Speedy Trial when the court *sua sponte* ordered a fifty-five day continuance to rule on a pre-trial motion by Ojile that was never filed, and nothing in the record indicates that the court was considering any motion that formed the basis of this continuance, and then the court uses this continuance as its reason to justify bringing Ojile to trial after the expiration of time as mandated by the Speedy Trial Statute.

**Ground Ten:** Ojile was denied effective assistance of counsel on his direct appeal.

**Supporting Facts:** Ojile was denied effective assistance of appellate counsel for appellate counsel failing to raise Grounds One (Insufficient Evidence on Counts 1, 11, 12 & 14 of B1007149), Grounds Two (A), Grounds Four, Grounds Eight, and Grounds Nine of this Habeas Petition in Ojile's appeal of right on direct appeal.

(Petition, ECF No. 1.)

## Ground One:  Convictions Upon Insufficient Evidence

As noted in the Report, Ojile and co-defendant Kenyatta Erkins were indicted in 2010 on various robbery-related offenses arising out of a scheme to target various gamblers at two Indiana casinos.  The defendants waived a jury and were tried to the bench by Hamilton County Common Pleas Judge Nadine Allen.  On appeal the convictions were affirmed in part and reversed in part.  *State v. Ojile*, 2012-Ohio-6015, 2012 Ohio App. LEXIS 5223 (1st Dist. Dec. 21, 2012).[1]  The First District made extensive findings, both of background facts and of the facts

---

[1] References herein to "*State v. Ojile, supra*" are to this opinion.

supporting conviction on the various incidents.  Those findings are quoted in the Report and will not be repeated here (ECF No.19, PageID 2623-30).

The Report divided the First Ground for Relief into sub-claims relating to various convictions.  Ojile has divided his Objections in the same way.

**Sub-claim One:    Conviction for Robbery of Victim Ingram (Count 2 of Case B-1006797) and Complicity to Robbery of Victims Boogher, Xinyu, Adams, Li, and Quach (Counts 22, 23, 25, 28, and 29 of Case B-1007149)**

Ojile raised this claim as his Fourth Assignment of Error on direct appeal.  The Report quotes the First District's decision on this assignment and concludes it reads Ohio law consistent with precedent and cites record evidence sufficient for each element (ECF No. 19, PageID 2633-38).

The Objections essentially repeat arguments Ojile made before the Report was filed and they do not require additional analysis here.  As to each of the convictions at issue on this sub-claim, the State produced evidence that Ojile had taken substantial steps, consistent with his and Erkins' modus operandi in other casino robbery incidents, to carry out robbery of these victims.

**Sub-claim Two: First Aggravated Robbery of Michael Weisbrod (Count 3 in Case B-1006797)**

In Sub-claim Two of the First Ground for Relief, Ojile argues there was insufficient evidence to convict him on the first aggravated robbery of Michael Weisbrod (the robbery on which Weisbrod was lured to his basement, apparently by tripping a circuit breaker, then tied up and threatened with a gun).

On reconsideration, the analysis made in the Report on this sub-claim (ECF No. 19, PageID 2638-39) does not require elaboration.

**Sub-claim Three: Aggravated Robbery of Davis Nguyen (Count 1 of Case No. B-1007149)**

On reconsideration, the analysis made in the Report on this sub-claim (ECF No. 19, PageID 2639-40) does not require elaboration.

**Sub-claim Four: Second aggravated Robbery of Michael Weisbrod (Count 11 of Case No. B-1007149)**

On reconsideration, the analysis made in the Report on this sub-claim (ECF No. 19, PageID 2640) does not require elaboration.

**Sub-claim Five: Aggravated Robbery of Daniel Duncan (Count 12 of Case No. B-1007149)**

On reconsideration, the analysis made in the Report on this sub-claim (ECF No. 19, PageID 2640-41) does not require elaboration.

**Sub-claim Six: Aggravated Robbery and Felonious Assault of Tien Dao (Counts 14, 15, and 16 of Case No. B-1007149)**

The analysis in the Report on this sub-claim (ECF No. 19, PageID 2641-43) remains sound in light of the Objections.  Ojile argues in his Objections that "[w]ithout impermissibly

stacking inferences, there is insufficient evidence for a rational trier of fact to conclude that petitioner committed this aggravated robbery."  (ECF No. 24, PageID 2723, citing *Brown v. Palmer*, 441 F.3d 347 (6th Cir. 2006)). In *Brown* the Sixth Circuit upheld a district court grant of relief on an aider and abettor conviction where *Brown* testified he "did not know the perpetrator [of a carjacking] before offering him a ride on the night in question and that he had no prior relationship with the victims" and the State offered no contrary evidence.  *Id.*  at 352.  That is hardly this case; abundant evidence offered by the State showed the affiliation of Ojile and Erkins in a common scheme to rob gamblers.

Ojile complains of the "stacking of inferences" to convict him on this count.  Here the victim, a native of Vietnam and thus fitting the profile of Erkins' and Ojile's preferred targets, testified he left the Hollywood Casino having won $1,500 at poker.  He drove to his home in Colerain Township in Ohio.  He was accosted by two men armed with guns. One of whom hit him in the head with a gun.  The two men followed him into his home, took his wallet and fled. In the wallet were his Social Security card, two California driver's licenses, and some credit cards.  *State v. Ojile, supra*, ¶¶ 25-26.  This is all direct testimony.  No inferences are required to rely on this testimony to conclude that two men robbed Dao at gunpoint of gambling proceeds and took money, credit cards, driver's licenses, and a Social Security card.

After Ojile's arrest, police searched the place where he was staying and found the identifying documents.  Only one inference is needed to conclude that Ojile was one of the robbers.  No other explanation of his possession of the identifying documents is offered.

Added to this inference is Ojile's admission to a cellmate (Tanks) that he participated in a robbery in which identification was taken that was later found in his residence.  That is not a "stacked" inference, but an independent piece of testimony which identifies Ojile as one of

Dao's attackers.

Ojile complains of another piece of evidence relied on by the First District.  At ¶ 27 that court found "[a]dditionally, video surveillance tapes showed Erkins following Dao as he left the casino on June 28."  In the Return of Writ Ojile made a conclusory assertion that this finding was not supported by the record (Memo in Support of Petition, ECF No. 5, PageID 57).  At the time of the Report, Ojile had still given no record references to support his argument and the Magistrate Judge, having reviewed the reference offered by the State's in its appeal brief, found the finding was supported by evidence (Report, ECF No. 19, PageID 2642).

Ojile has now produced record references which show that the referenced surveillance tape was not for June 28, 2010, when Dao was robbed, but for October 3, 2010, when Ojile and Erkins robbed another of their victims, Kiran Racherla.  Given that reference, the last sentence of ¶ 27 is not supported by the evidence of record.

However, when that finding drops out of the case, there is still adequate evidence to support the conviction.  Dao was robbed at gunpoint by two men who took his personal identification which was later found in Ojile's residence.  Ojile admitted to another person who testified at trial that he participated in a robbery and took personal identification which was found in his residence.  That is sufficient to satisfy *Jackson v. Virginia*, 443 U.S. 307 (1979).

**Sub-claim Seven: Conspiracy to Commit Aggravated Robbery of Kiran Racherla (Count 26 of Case No. B-1007149)**

In his Seventh Sub-claim, Ojile claims there was insufficient evidence presented to convict him with respect to the aggravated robbery of Kiran Racherla. On reconsideration, no additional analysis is needed on this sub-claim beyond what is included in the Report.

**Ground Two:  Ineffective Assistance of Trial Counsel**

In his Second Ground for Relief, Ojile claims he received ineffective assistance of trial counsel in three respects, presented as three sub-claims.

**First Sub-claim:  Failure to Subpoena Alibi Witness**

In his First Sub-claim, Ojile asserts he received ineffective assistance of trial counsel when his trial attorney did not secure the presence at trial of his alibi witness, Allyson Hawkins. Ms. Hawkins allegedly could have provided proof that Petitioner was on airline flights to and from New York at the time of the robbery charged in Count 3 of Case No. B-1006797 by explaining the documents from the airlines which were tendered as exhibits (Memorandum in Support of Petition, ECF No. 5, PageID 60-64).

The Warden asserted this claim was procedurally defaulted because it was not raised on direct appeal and the Report agreed (ECF No. 19, PageID 2645-50).  Ojile later claimed in an application to reopen the appeal that it was ineffective assistance of appellate counsel to fail to appeal on this basis and the First District rejected that claim on the merits.  The Report finds this conclusion is entitled to AEDPA deference under *Harrington v. Richter,* 562 U.S. 86, 99, (2011)(Report, ECF No. 19, PageID 2650).

Ojile claims he had an "ironclad alibi with 100% certainty" which Hawkins could have established by explaining to Judge Allen the flight records Ojile introduced.  He does not deny, however, that Hawkins could not testify she saw him on the relevant flights nor does he show

9

that she was amenable to subpoena in Hamilton County, Ohio.  Ojile also fails to show how his alibi was ironclad in the face of testimony by cellmate Tanks that Ojile admitted to him he was going to use the plane tickets to create a false alibi.  *State v. Ojile, supra*, ¶ 82.

Under *Harrington* a district court must indulge two layers to deference in deciding an ineffective assistance of counsel claim, deference first to the lawyer who made the decision not to do something and then deference to the state court that decided the ineffective assistance of trial counsel claim.  In this case, another layer is added, deference to the decision of the appellate lawyer who declined to raise the claim.  On this basis, Sub-claim One is without merit.

**Sub-claim Two:  Ineffective Assistance of Trial Counsel**

In Subclaim Two Ojile asserts he received ineffective assistance of trial counsel when his trial counsel failed to introduce evidence in his possession marked "for counsel only" that proved it was physically impossible for Ojile to have committed the robbery on Danielle Duncan on Counts 12 of B1007149.

The Report rejected this claim because it was based on Erkins' acquittal of the same charge and trial counsel would have had to decide whether or not to introduce the records before there was a finding as to Erkins (Report, ECF No. 19, PageID 2651).[2]

Ojile claims the records would have proven that co-defendant Erkins was 1.4 miles north of the robbery scene "minutes after the robbery."   Ojile's claim is that because the victim testified he was robbed by only one person, these records would have shown Erkins was that person.   This claim was first presented in post-conviction on a theory it would have proved

---

[2] The Report says counsel could not have known what the jury was likely to do with respect to Erkins.  This was in error since the case was tried to the bench.

Ojile's alibi. Ojile now admits those records did not establish and alibi and may even have been damaging because he and Erkins had been identified as collaborators in this robbery scheme (Objections, ECF No. 24, PageID 2732). Under those circumstances, counsel's decision not to introduce the records appears even in hindsight to have been good tactics.

**Sub-claim Three: Ineffective Assistance of Trial Counsel in Failing to Suppress Cellmate's Statements**

In Sub-claim Three Ojile asserts he received ineffective assistance of trial counsel as trial counsel failed to suppress statements Ojile allegedly made to Tyrone Tanks, statements Ojile claims were obtained in violation of his Sixth Amendment right to counsel.

Ojile asserts the Report is in error in finding this claim was raised in post-conviction rather than on direct appeal (Objections, ECF No. 24, PageID 2734). What the Report actually says is "Ojile raised this claim on direct appeal as his seventh assignment of error. . ." (ECF No. 19, PageID 2652). The Report notes Ojile again raised a parallel claim in his post-conviction petition. *Id.* at PageID 2653.

Aside from this observation in response to the Objections, no further analysis is needed beyond what is made in the Report.

**Ground Three: Use of Impermissibly Suggestive Identification Procedure**

In his Third Ground for Relief, Ojile asserts he was deprived of due process when the prosecutor used an impermissibly suggestive identification procedure. The Report concludes this claim is preserved for merits review but is without merit (Report, ECF No. 19, PageID 2654-58).

Ojile objects that the Report "focuses only on one aspect of petitioner's suggestive

identification claim:  the news report from which Weisbrod had allegedly recognized petitioner. . . . But petitioners [sic] claim extends way beyond the 'news report' argument and therefore must be given full review."  (Objections, ECF No. 24, PageID 2736-37.)    Actually, the reader will see that the Report does discuss the full claim and nothing in the Objections persuades the Magistrate Judge that the conclusion in the Report on this claim is wrong.  However several points in the Objections require clarification.

First, Ojile notes that the Report found Michael Weisbrod was not asked for but volunteered an identification of Ojile and Erkins when shown photographs by the prosecutor two weeks before trial (Report, ECF No. 19, PageID 2658).  Ojile notes that in the companion habeas corpus case of Kenyatta Erkins, the Magistrate Judge found Weisbrod did not volunteer an identification.  Erkins made the same point in his Objections.  In a Supplemental Report in Erkins' case, the Magistrate Judge quoted the entire testimony involved, admitted he had made a mistake in that case, and concluded that Weisbrod did volunteer an identification.  *Erkins v. Oppy*, 2015 U.S. Dist. LEXIS 98356, *9-14 (S.D. Ohio July 28, 2015).[3]

Ojile also objects that the Report does not properly apply *Neil v. Biggers*, 409 U.S. 188 (1972), where the Supreme Court held

> [T]he factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

409 U.S. at 199; *accord, Manson v. Brathwaite*, 432 U.S. 98, 114 (1977).  In deciding the related eighth assignment of error on appeal, the First District correctly cited *Manson* for the proposition

---

[3] A comparison of the Objections in these two cases suggests Erkins and Ojile, both imprisoned at Orient Correctional, collaborated as closely on their Objections as they did in the string of armed robberies for which they were convicted.

that, to obtain suppression of an identification, a defendant must prove both that a pre-trial confrontation was unnecessarily suggestive and that the resulting identification was unreliable. *State v. Ojile, supra*, ¶ 75.  Weisbrod's second robbery happened in a well-lit area and he got a good look at the faces of his attackers.  *Id.*  at ¶ 76.  He told the investigating officer at the time that he would be able to identify them if he saw them again.  *Id.*  When they were arrested several months later, he saw their pictures in a news clip he saw without State intervention and recognized them.  Applying the factors from Neil, Weisbrod had a good opportunity to view his robbers and paid attention to them.  His prior description that the robbers were two African-American men of medium build is not detailed but also not inaccurate.  He was certain of the identification and about six months elapsed between when he was robbed the second time and the arrests and news clip.  Expressly weighing the *Neil* factors, the Magistrate Judge concludes the First District's application of Supreme Court precedent on the eighth assignment of error was not an objectively unreasonable application of *Neil* and *Manson*.  If instead of AEDPA deferential review, this claim is considered *de novo*, the Magistrate Judge also concludes the identification was not unreliable.


**Ground Four: Violation of Due Process: *Brady v. Maryland***


In his Fourth Ground for Relief, Ojile asserts his due process rights were violated when the prosecutor failed to turn over the single photograph of Ojile he showed to Michael Weisbrod two weeks before trial. Ojile's theory is that if the photograph had been turned over, his counsel could have filed a motion to suppress the in-court identification which would have been successful.

The Report concludes this claim is procedurally defaulted because it depends on record evidence but was not raised on direct appeal (Report, ECF No. 19, PageID 2658-59).   Upon reconsideration in light of the Objections, the Magistrate Judge concludes no further analysis is needed on this Ground for Relief.

**Ground Five: Prosecutorial Misconduct: Use of Knowingly Perjured Testimony**

In his Fifth Ground for Relief, Ojile asserts his due process rights were violated when the prosecutor knowingly used perjured testimony to convict him. In particular he asserts the testimony of co-defendant Amy Hoover and jailhouse informant Tyrone Tanks was known to be perjured, yet elicited by the prosecutor and relied on in closing argument (Petition, ECF No. 1, PageID 12).

The Report concluded this claim was procedurally defaulted as to Tyrone Tanks and without merit as to Amy Hoover (ECF No. 19, PageID 2659-64).

**Tyrone Tanks**

As to Tyrone Tanks, Ojile objects that the "Magistrate mischaracterizes the appellate court's ruling" by concluding the court of appeals was enforcing Ohio's *res judicata* doctrine. *Id.* at PageID 2660-61.  The actual ruling from the First District was

> Ojile's first through fourth postconviction claims were subject to dismissal without a hearing. The claims involved substantially the same facts and issues that Ojile had raised, and that we had rejected, in the direct appeals. See *Ojile*,. 1st Dist. Nos. C-110677 and C-110678, 2012-0hio-6015, at 'lJ 56, 59, and 69-84. Thus, under the doctrine of the law of the case, the common pleas court, in reviewing those claims, was bound by the law of our decision in

> those appeals. See *Nolan v. Nolan*, 11 Ohio St.3d 1, 3, 462 N.E.2d
> 410 (1984); *Perez v. Cleveland*, 1st Dist. No. C-940553, 1995
> Ohio App. LEXIS 5436 (Dec. 13, 1995); see also *State v. Fischer*,
> 128 Ohio St.3d 92, 2010-0hio-6238, 942 N.E.2d 332, ¶¶33-35
> (noting that "the law-of-the-case doctrine is rooted in principles of
> res judicata and issue preclusion" and "retains its vitality in Ohio").

*State v. Ojile*, Case No. C-120601 (1ˢᵗ Dist. Jun 12, 2013)(unreported, copy at ECF No. 13-2, PageID 844.

Ojile complains that the First District "incorrectly applied the doctrine of the law of the case" because at the time Judge Allen ruled on the petition for post-conviction relief the First District had not yet ruled on direct appeal and thus there was no law of the case yet in existence (Objections, ECF No. 24, PageID 2746).

Examination of the record confirms Ojile's chronology.  Judge Allen filed her Findings on August 22, 2012 (ECF No. 13-2, PageID 806). *State v. Ojile, supra,* was not rendered until December 21, 2012.  Thus as of the time Judge Allen ruled, there was no law of the case for her to apply.

What Judge Allen did rule was that the Ohio doctrine of *res judicata*  in criminal cases prevented a hearing on the post-conviction petition where the claims raised in the petition "either were raised [or] could have been raised, at trial or on direct appeal."  (Findings, ECF No. 13-2, PageID 807.)  She also found Ojile presented insufficient evidentiary material outside the record to support his claims. *Id.*

Ojile asserts this Court should "overrule the state courts [sic] procedural ruling . . . and reach the merits of this claim.  But regardless of the First District's error, Judge Allen's *res judicata*  ruling was correct under Ohio law.  As to the Tanks' testimony, the Report concluded,

> The Magistrate Judge concludes the claim as to any perjury by
> Tyrone Tanks is procedurally defaulted by Ojile's failure to raise it

> on direct appeal. The evidence *dehors* the record he relies on – Tanks' proffered testimony – was available to be included in the record on direct appeal and therefore this claim could have been raised on direct appeal, but was not. In refusing to hear it in post-conviction, the Ohio courts were enforcing their *res judicata* procedural rule which the Sixth Circuit has repeatedly held is an adequate and independent state ground of decision. See *Durr v. Mitchell*, 487 F.3d 423, 432 (6th Cir. 2007), and other cases cited supra at Ground Two, First Sub-claim.

(ECF No. 19, PageID 2660-61.)  Ojile has not shown any way in which Judge Allen's *res judicata* conclusion was an incorrect application of Ohio criminal *res judicata* law.  See *State v. Perry*, 10 Ohio St. 2d 175 (1967).

**Amy Hoover**

Ojile's claim that the prosecutor knowingly used co-defendant Amy Hoover's perjured testimony was raised on direct appeal and rejected on the merits.  The Report grants this conclusion AEDPA deference (ECF No. 19, PageID 2661-64).

This sub-claim does not require additional analysis beyond that made in the Report.

**Ground Six:  Conviction on Uncharged Offense**

In his Sixth Ground for Relief, Ojile asserts he was denied due process of law when he was convicted on Count 26 in Case No. B-1007149 of conspiring to commit aggravated robbery when he had been charged with the actual robbery rather than conspiracy.

Although the record showed that Judge Allen had orally announced a conviction for conspiracy, the First District found that she had lawfully amended the finding to complicity.

16

*State v. Ojile, supra*, ¶¶ 41-43.  The Report recommended dismissal because Ojile had not shown this violated any clearly established federal law (ECF No. 19, PageID 2665-66).

In his Objections, Ojile relies on his right to be indicted by a grand jury (ECF No. 24, PageID 2754).  However, the Fifth Amendment right to grand jury indictment does not apply to the States.  *Hurtado v. California*, 110 U.S. 516 (1884); *Branzburg v. Hayes,* 408 U.S. 665, 687-88 n. 25 (1972); *Gerstein v. Pugh,* 420 U.S. 103 (1975).


**Ground Seven:  Denial of Confrontation Right**


In his Seventh Ground for Relief, Ojile asserts he was denied his right to confront an adverse witness, Officer Gregory Morgan, the officer who recovered Tien Dao's Social Security card, driver's licenses, and credit card during a search of Ojile's residence.

The Report concluded the First District's decision on this claim on direct appeal was not an objectively unreasonable application of the leading Supreme Court case, *Crawford v. Washington*, 541 U.S. 36 (2004)(ECF No. 19, PageID 2679).

Ojile argues his Objections at length (ECF No. 24, PageID 2755-62).  Essentially his claim is that the officer who found Tien Dao's identification documents in Ojile's residence, Officer Morgan, should have been forced to testify, instead of Agent Crock who saw Morgan find the documents.  Ojile argues the documents themselves are "testimonial" under Supreme Court precedent.

Although the documents were important evidence against Ojile, they were not testimonial because they were not created to be evidence.  Rather, they were created to be used by the person from whom Ojile stole them as evidence of his identity (Social Security card, driver's licenses)

or to enable him to access credit (credit card).  Their evidentiary value consisted of where they were found, given that they had been taken from their owner in a robbery.  Agent Crock who observed the finding testified about his observation and was cross-examined.  No statement of Officer Morgan was admitted into evidence.

Thus this case contrasts with *Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009), and *Bullcoming v. New Mexico*, 564 U.S. ___, 131 S. Ct. 2705, 180 L. Ed. 2d 610 (2011), where the Supreme Court held that a lab report on seized evidence is testimonial and the Confrontation Clause prohibits admission of a certificate of an absent lab analyst of results of blood test unless analyst was subject to cross-examination before trial.  Officer Morgan did not do any testing on these documents; their evidentiary value was not dependent on any such testing.


**Ground Eight: Deprivation of Right to Counsel by Placement of Informant**

In his Eighth Ground for Relief, Ojile claims he was deprived of his Sixth Amendment right to counsel when the State intentionally placed him in the same cell as Tyrone Tanks and instructed Tanks to elicit damaging admissions.

The Report concluded this Ground for Relief was procedurally defaulted (ECF No. 19, PageID 2670).  Ojile objects that here, as with Ground Five, the First District incorrectly applied the law of the case doctrine to affirm Judge Allen (ECF No. 24, PageID 2762-64).  He also faults the Report for discussing only the raising of this claim in post-conviction and not deciding his claim at ineffective assistance of appellate counsel excuses any procedural default. *Id.*  at PageID 2764-65.  Finally, he offers an extended argument on the merits. *Id.*  at PageID 2765-67.

To untangle these claims, it is necessary to step back to the post-conviction proceeding. This was the first claim for relief Ojile raised in post-conviction.  Judge Allen found it barred by

*res judicata* and by Ojile's failure to submit sufficient evidence *dehors* the record to require a hearing (Findings, ECF No. 13-2, PageID 807).  Ojile has shown that the First District had the chronology wrong and there was no law of the case for Judge Allen to apply when she dismissed the post-conviction petition.  He has not shown that her *res judicata* ruling was in error.  Instead, he implicitly accepts that ruling and contends he can show excusing cause and prejudice, to wit, ineffective assistance of appellate counsel in failing to raise this claim on direct appeal.

As noted in the Report before ineffective assistance of appellate counsel can provide cause and prejudice to excuse a procedural default, it must first be presented to the state courts. (ECF No. 19, PageID 2649, citing *Edwards v. Carpenter*, 529 U.S. 446 (2000).  Ojile presented this claim of ineffective assistance of appellate counsel to the First District which denied it on the merits (Entry, ECF No. 13-2, PageID 595).  To overcome that denial, Ojile must show it was based on an unreasonable application of clearly established Supreme Court law.  He makes no effort in the Objections to do so, but the Court will consider the merits of that claim *sua sponte*.

A criminal defendant is entitled to effective assistance of counsel on appeal as well as at trial, counsel who acts as an advocate rather than merely as a friend of the court. *Evitts v. Lucey*, 469 U.S. 387 (1985); *Penson v. Ohio*, 488 U.S. 75 (1988); *Mahdi v. Bagley*, 522 F.3d 631, 636 (6th Cir. 2008).  The *Strickland* test applies to appellate counsel.  *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Burger v. Kemp,* 483 U.S. 776 (1987).  To evaluate a claim of ineffective assistance of  appellate counsel, then, the court must assess the strength of the claim that counsel failed to raise. *Henness v. Bagley*, 644 F.3d 308 (6th  Cir. 2011), *citing  Wilson v. Parker*, 515 F.3d 682, 707 (6th  Cir. 2008). Counsel's failure to raise an issue on appeal amounts to ineffective assistance only if a reasonable probability exists that inclusion of the issue would have changed the result of the appeal. *Id*., *citing Wilson.*

An appellate attorney need not advance every argument, regardless of merit, urged by the appellant. *Jones v. Barnes*, 463 U.S. 745, 751-752 (1983)("Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues.") Effective appellate advocacy is rarely characterized by presenting every non-frivolous argument which can be made. *Joshua v. DeWitt*, 341 F.3d 430, 441 (6th Cir. 2003); *Williams v. Bagley,* 380 F.3d 932, 971 (6th Cir. 2004), *cert. denied,* 544 U.S. 1003 (2005); see *Smith v. Murray*, 477 U.S. 527 (1986).

"In order to succeed on a claim of ineffective assistance of appellate counsel, a petitioner must show errors so serious that counsel was scarcely functioning as counsel at all and that those errors undermine the reliability of the defendant's convictions." *McMeans v. Brigano*, 228 F.3d 674 (6th Cir. 2000), citing *Strickland* and *Rust v. Zent*, 17 F.3d 155, 161-62 (6th Cir. 1994). Counsel's failure to raise an issue on appeal could only be ineffective assistance if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal. *McFarland v. Yukins*, 356 F.3d 688, 699 (6th Cir. 2004), *citing Greer v. Mitchell,* 264 F.3d 663, 676 (6th Cir. 2001), *cert. denied,* 535 U.S. 940 (2002). "Counsel's performance is strongly presumed to be effective." *McFarland, quoting Scott v. Mitchell*, 209 F.3d 854, 880 (6th Cir. 2000)(*citing Strickland*). "To prevail on a claim of ineffective assistance of appellate counsel, a petitioner must show that appellate counsel ignored issues [which] are clearly stronger than those presented." *Webb v. Mitchell,* 586 F.3d 383, 399 (6th Cir. 2009); *Smith v. Robbins*, 528 U.S. 259, 288 (2000), *quoting Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986).

Ojile makes an argument on the merits, inferentially arguing that if his attorney had appealed on this claim, he would have been successful, relying on *Ayers v. Hudson,* 623 F.3d 301 (6th Cir. 2010). In *Ayers* the Sixth Circuit reversed denial of the writ by the district court. It

found, importantly, that the district court had inappropriately given AEDPA deference to the state appellate court's decision because the lead opinion did not speak for a majority of the Eighth District. *Id.* at 308. Furthermore, the state appellate decision on Sixth Amendment claim had been on direct appeal. *Id.* at 306-07. Here the Sixth Amendment claim was not raised on direct appeal, although Judge Allen found it could have been. Moreover, every appellate decision in this case, whether on direct appeal, post-conviction appeal, or the 26(B) application, was unanimous. Therefore our review in habeas is not *de novo*, as was the Sixth Circuit's in *Ayers*, but done with AEDPA deference.

Ojile's *Massiah* claim would not have been a "dead-bang winner." As evidence of Tanks status as an agent of the State, Ojile relies on a reported decision in Tanks' federal case (ECF No. 16, citing *United States v. Tanks*, 2012 U.S. Dist. LEXIS 4267 [the correct page is 42677](E.D. Ky. Mar. 29, 2012). In denying a motion for recusal, Judge Reeves disclosed the contents of a sealed supplement to the plea agreement which provided Tanks would cooperate with the United States. There is no indication in the opinion of when Tanks signed the plea agreement. It does not bind him to assist any State authorities. Finally, it was filed under seal and would not have been available to Tanks' appellate attorney.

Ojile's second citation is to *United States v. Tanks*, 2014 U.S. Dist. LEXIS 746 (E.D. Ky. Jan. 6, 2014). In that opinion, which denied Tanks' federal habeas corpus action, Judge Reeves cites the same sealed supplement to plea agreement referenced in the prior case. Obviously information reported in the Lexis database in January 2014 would not have been available to counsel on the direct appeal.

Even assuming the facts disclosed in the two reported *Tanks'* decisions are relevant to the Sixth Amendment claim, they would not have been available to appellate counsel because they

21

were not part of the record on direct appeal.  Ojile gives no record references to the facts he says the record does show about Tanks (ECF No. 24, PageID 2766).  Thus Ojile has not shown that the *Massiah* argument, presented on appeal with the record that was available, would have been stronger than the arguments that were presented on appeal.  Thus he has not proven that the First District's rejection of this claim was an objectively unreasonable application of *Strickland v. Washington,* 466 U.S. 668 (1984).  Therefore he has not proven ineffective assistance of appellate counsel as excusing cause for his procedural default of this Ground for Relief.


**Ground Nine:  Denial of Right to Speedy Trial**


In his Ninth Ground for Relief, Ojile claims his right to a speedy trial under the Sixth Amendment was violated by the pre-trial continuance granted by the trial judge. He asserts Judge Allen granted a fifty-five day continuance to rule on a motion, but nothing in the record indicates the time was being used to decide a motion (Petition, ECF No. 1, PageID 16). Ojile claims he first raised this claim in his 26(B) Application. *Id.*

Upon review, the Magistrate Judge believes this Ground for Relief does not require analysis beyond what is given in the Report (ECF No. 19, PageID 2670-71).


**Ground Ten:  Ineffective Assistance of Appellate Counsel**


In his Tenth Ground for Relief, Ojile asserts he received ineffective assistance of appellate counsel because appellate counsel failed to plead assignments of error raising Grounds One, Two(A), Four, Eight, and Nine (Petition, ECF. No. 1, PageID 17).

22

Upon review, the Magistrate Judge believes this Ground for Relief does not require analysis beyond what is given in the Report (ECF No. 19, PageID 2670-71).

## Certificate of Appealability

In the Report, the Magistrate Judge made no recommendation on a certificate of appealability, but directed Petitioner to include in any objections the arguments he wishes the Court to consider on a certificate (ECF No. 19, PageID 2672).

Ojile's response to that directive has been *pro forma*:  he has cited *Slack v. McDaniel*, 529 U.S. 473 (2000), but not made any argument showing how other reasonable jurists could have reached conclusions different from those reached in the Report.  Because reasonable jurists would not disagree with the conclusions reached in this and the original Report, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous and therefore should not be permitted to proceed *in forma pauperis*, with two exceptions.  The Court should grant a certificate of appealability on the issue of whether Mr. Gibson's display of photographs of all three Defendants to Michael Weisbrod was unduly suggestive because the issue is very fact dependent and reasonable jurists could disagree with the Magistrate Judge's conclusion.   Secondly, the Eighth Ground for Relief presents sufficiently unusual facts that reasonable jurists might disagree on its resolution.

## Conclusion

Having reconsidered the case in light of Objections, the Magistrate Judge again

respectfully recommends that the Petition be dismissed with prejudice.

July 30, 2015.

s/ *Michael R. Merz*
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).