# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

UGBE OJILE,

                Petitioner,

     v.

WARDEN, CORRECTIONAL
RECEPTION CENTER,

                Respondent.

Case No. 1:13cv844

Barrett, Judge
Merz, M.J.

## OPINION AND ORDER

Before the Court is the Report and Recommendation of the Magistrate Judge ("Report") (Doc. 19), Petitioner's Objections (Doc. 24), the Supplemental Report and Recommendation of the Magistrate Judge ("Supplemental Report") (Doc. 26), and Petitioner's Supplemental Objections (Doc. 27).

## I.     BACKGROUND

The procedural background and the pertinent facts have been adequately summarized in the Report (*see* Doc. 19), and is incorporated here. Where necessary in addressing the objections, the Court will identify the facts relevant to its decision.

## II.     STANDARDS OF REVIEW

### A.     Objections

When objections to a magistrate judge's report and recommendation are received on a dispositive matter, the assigned district judge "must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). After review, the district judge "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." *Id.; see also* 28 U.S.C.

§ 636(b)(1).  General objections are insufficient to preserve any issues for review: "[a] general objection to the entirety of the Magistrate [Judge]'s report has the same effect as would a failure to object."  *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).  Nevertheless, the objections of a petitioner appearing pro se will be construed liberally.  *See Erickson v. Pardus,* 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S. Ct. 285, 50 L. Ed. 251 (1976)).

**B.**      **28 U.S.C. § 2254**

Under 28 U.S.C. § 2254(a), a district court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to a judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  Generally that means that an application for writ of habeas corpus shall not be granted with respect to any claim adjudicated on the merits in the State court unless the petitioner properly has exhausted his administrative remedies and the adjudication either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(b), (d).  "This is a 'difficult test to meet,' . . .  and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.'"  *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011); *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)).  The petitioner carries the burden of proof.  *Cullen*, 563 U.S. at 181.

III.     **ANALYSIS**

The Report and Supplemental Report address the ten Grounds for Relief plead by Petitioner and the issues of a certificate of appealability.  Each Ground for Relief and the certificate of appealability are discussed below.

A.     **First Ground for Relief**

Petitioner argues his convictions are based on insufficient evidence.  This Ground for Relief attacked different convictions and thus, the Magistrate Judge addressed each one separately.  The same will be done here.

1.     **Sub-claim One: Conviction for Robbery of Victim Ingram (Count 2 of Case B-1006797) and Complicity to Robbery of Victims Boogher, Xinyu, Adams, Li, and Quach (Counts 22,23, 25, 28, and 29 of Case B-1007149)**

Petitioner argues there was insufficient evidence because the crime of robbery as defined by Ohio law was never completed.  The crux of Petitioner's argument is that because no robbery actually occurred, there was insufficient evidence to convict him of those counts.  The Report recommended that his First Ground for Relief be dismissed because Ohio's definition of robbery includes attempted robbery, and there was sufficient evidence of an attempt.  (Doc. 19, PageID 2638).

Petitioner objected to that recommendation on the basis that the State failed to prove beyond a reasonable doubt all the elements of the crime of robbery were satisfied.  He takes particular issue with the portion of Ohio Rev. Code 2911.02(A)(1) that provides "[n]o person . . . shall do any of the following: (1) Have a deadly weapon on or about the offender's person or under the offender's control." Ohio Rev. Code. 2911.02(A)(1).  (Doc. 24, PageID 2705).

The Magistrate Judge, however, explained that the First District Court of Appeals interpreted R.C. 2911.02(A)(1) to include attempt of a theft offense. As the First District Court of Appeals explained on direct appeal:

> The First District Court of Appeals explained on direct appeal that "[r]obbery under R.C. 2911.02(A)(1) is 'an offense which itself prohibits an attempt.' *State v. Still*, 11th Dist. No. 93-L-195, 1994 Ohio App. LEXIS 5506, *5 (Dec. 9, 1994). A criminal attempt occurs when an offender 'purposely does or omits to do anything which is an act of omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime.' *State v. Woods*, 48 Ohio St.2d 127, 357 N.E.2d 1059 (1976), paragraph one of the syllabus, *overruled on other grounds, State v. Downs*, 51 Ohio St.2d 47, 364 N.E.2d 1140 (1977).

*State v. Ojilie*, 2012-Ohio-6015, 2012 Ohio App. LEXIS 5223, ¶ 47 (1st Dist. Dec, 21, 2012).

The law of attempt in Ohio provides that "[n]o person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct which, if successful, would constitute or result in the offense." Ohio Rev. Code 2923.02(A); *see also State v. Woods*, 48 Ohio St.2d 127 (1976). In determining whether an attempt has been committed, courts consider whether conduct constitutes a "substantial step" toward committing the underlying crime. *Id.*

Having reviewed the issue de novo, the Court agrees with the Magistrate Judge that there was sufficient evidence as to each of these victims that Petitioner had the purpose of robbing them and took substantial steps to carry out that purpose. Petitioner does not object to the Magistrate Judge's conclusion that his conduct satisfies a substantial step toward a robbery, and instead focuses on the lack of evidence of a weapon. Ohio Rev. Code 2911.02(A) provides: [n]o person, in *attempting* or committing a theft offense or in fleeing immediately after the *attempt* or offense shall do any of the following…" Thus, because his conduct satisfies an attempt, Sub-claim One is without merit.

The Court finds this issue to be a particularly close call, as it is not particularly convinced that the subsection of the statue under which Petitioner was convicted does not require proof of a weapon. *See State v. Wharf*, 715 N.E.2d 172, 174 (Ohio 1999). Nevertheless, the Court cannot say that no rational trier of fact would have found the elements of robbery satisfied beyond a reasonable doubt. Moreover, even if this Court were to conclude no reasonable trier of fact would have convicted Petitioner, the undersigned gives deference to the First District's determination, as it was not an objectively unreasonable application of the law.

The Court, however, grants a certificate of appealability on the issue of whether the crime of robbery under R.C. 2911.02(A)(1) requires proof of a weapon. The Court finds that reasonable jurists could reach different conclusions with respect to this issue and thus, a certificate of appealability is warranted.

### 2. Sub-claim Two: First Aggravated Robbery of Michael Weisbrod (Count 3 in Case B-1006797)

In Sub-claim Two Petitioner argues there was insufficient evidence to convict him of the first aggravated robbery of Weisbrod because he had evidence from Continental Airlines supporting an alibi. He also argues that the evidence presented was that a single male and female – known to be his two co-defendants – committed the crime. Thus, according to Petitioner there was not sufficient evidence to convict him.

The Magistrate Judge explained that courts are not to weigh the evidence, but to determine if there was competent testimony on each element, which if believed by the trier of fact, is sufficient. In the Report, he concluded that there was sufficient evidence to convict Petitioner. (Doc. 19, PageID 2639).

Petitioner objects, not to the proper analysis outlined by the Magistrate Judge, but to the conclusion there was sufficient evidence. He argues that Hoover's "testimony by itself was

insufficient to convict because not only did her testimony not corroborate the facts of the case, her testimony was also so unreliable as a co-defendant who received sentencing concessions in exchange for her testimony." Doc. 24, PageID 2714). He argues that under Ohio law such testimony should be "weighed with great caution." (Id. at PageID 2715) (citing Ohio Rev. Code 2923.03(D)).

Having reviewed the issue de novo, the undersigned agrees with the Magistrate Judge that there was testimony presented which, if believed by the trier of fact, was sufficient. He once again asks the Court to weigh the evidence by contending Hoover's testimony should have been given less weight. The undersigned disagrees with Petitioner that no rational trier of fact could have agreed with the judge.

> **3.      Sub-claim Three: Aggravated Robbery of Davis Nguyen (Count 1 of Case No. B-1007149)**

As to this Count, Petitioner takes issue with the victim's identification of Petitioner as the attacker. He argues the victim "had way more than 'reasonable doubt' as to his attacker[']s identity." (Doc. 24, PageID 2717). The Magistrate Judge correctly explained that *Jackson v. Virginia*, 443 U.S. 307 (1979) does not require a witness to state any particular level of certainty in his identification to provide proof beyond a reasonable doubt. Moreover, the corroborating evidence – namely, the victim's personal information (name, date of birth, address, and Social Security number) were handwritten on the back of a business card found in Petitioner's wallet when he was arrested. (Doc. 19, PageID 2639-40). Despite Petitioner's insistence to the contrary, the undersigned agrees with the Magistrate Judge that the evidence presented was sufficient.

**4.    Sub-claim Four: Second Aggravated Robbery of Michael Weisbrod (Count 11 of Case No. B-1007149)**

Petitioner argues that a "suggestive in court identification with absolutely no other supporting or corroborating evidence is insufficient evidence to convict because of the inherent danger of the suggestive nature of in-court identification at trial." (Doc. 24, PageID 2718). He contends that Weisbrrod made his in-court identification with equivocation and lack of detail. (Doc. 2640, PageID 2640). He argues "certainty affects reasonable doubt which directly affects sufficiency." (Id.).

Upon de novo review, the Court finds Petitioner's argument is not well taken. While certainty and sufficiency are related concepts, the simple fact remains: an identification does not require 100% certainty to prove guilt beyond a reasonable doubt. As the First District Court of Appeals explained, Weisbrod "told the investigating officer that if he saw the men again he could identify them." (Doc. 19, PageID 2626). Six months later, he did just that. The trier of fact apparently found Weisbrod's in-court identification to be credible. It is not this Court's job to re-weigh the evidence. As the Magistrate Judge explained, while in-court identifications are suggestive, the United States Supreme Court precedent does not put restraints on how these identifications occur, regardless of whether Petitioner finds the same to be fundamentally unfair. (Doc. 19, PageID 2640; Doc. 24, PageID 2718).

**5.    Sub-claim Five: Aggravated Robbery of Daniel Duncan (Count 12 of Case No. B-1007149)**

Petitioner argues that because his co-defendant, Erkins, was acquitted on this count, then the evidence could not have been sufficient to convict him, particularly when the "majority of the trail evidence pointed towards Erkins and not petitioner?" (Doc. 4, PageID 2720).

The Court finds the Magistrate Judge properly concluded there was sufficient evidence to convict Petitioner of this Count. Six months after Duncan was robbed, the handgun taken from him was found in Petitioner's gym bag. Moreover, Tyrone Tanks testified that Petitioner admitted to committing a robbery in which they took the victim's handgun. (Doc. 19, PageID 2641). The law does not require a defendant to be acquitted of a crime simply because his co-defendant was. Rather, the trier of fact apparently determined, based upon the evidence outlined above, that although the State failed to prove Erkins' guilt beyond a reasonable doubt, the State did prove the same with respect to Petitioner.

### 6. Sub-claim Six: Aggravated Robbery and Felonious Assault of Tien Dao (Counts 14, 15, and 16 of Case No. B-1007149)

Petitioner argues there was insufficient evidence to convict him of the aggravated robbery and felonious assault of Dao.[1] The crux of Petitioner's argument is that in order to convict him, the trier of fact had to "stack inferences." But as the Magistrate Judge explained in his Supplemental Report, there was direct evidence that two men robbed the victim at gunpoint of gambling proceeds and took money, credit cards, driver's licenses and a Social Security Card. (Doc. 26, PageID 2778) (citing *State v. Ojile, supra*, ¶¶ 25-26). After his arrest, the police searched the place where he was staying and found the identifying documents. (Id.). Put plainly, this is not "stacking inferences." Moreover, Tyrone Tanks testified that Petitioner admitted to him being involved in a robbery in which a victim's personal identifying information was taken and later found where Petitioner was staying.

---

[1] In his Objections, Petitioner argued that video surveillance relied upon by the First District was not actually from that date Dao was robbed, but from another robbery committed by Petitioner and Erkins. Upon review, the Magistrate Judge agreed with Petitioner that the video surveillance cited was indeed from the date of another robbery and thus, found it was not supported by the evidence. (Doc. 26, PageID 2229). Nevertheless, the Magistrate Judge concluded there was still adequate evidence to support the conviction.

In Petitioner's Supplemental Objections, he appears to suggest that because multiple inferences could be drawn as to the evidence related to this count, he should not have been convicted.[2] This is not the standard. Just because Petitioner is able to devise an alternate explanation does not mean there was not sufficient evidence.

Next, Petitioner argues, similar to before, that because Erkins was found not guilty, he too must be found not guilty. As explained *supra* based upon the evidence discussed above, the undersigned agrees with the Magistrate Judge there was adequate evidence to support the conviction under *Jackson*. The undersigned cannot say that no rational trier of fact would have found Petitioner guilty, regardless of the outcome in Erkins' case.

### 7. Sub-claim Seven: Conspiracy to Commit Aggravated Robbery of Kiran Racherla (Count 26 of Case No. B-1007149)

Finally, as to Sub-claim Seven, Petitioner argues there was insufficient evidence presented to convict him of the aggravated robbery of Racherla. Once again, his argument is unpersuasive. Petitioner argues the facts relied upon by the First District amount to reasonable speculation – not reasonable doubt. (Doc. 24, PageID 2727). As the Magistrate Judge explained in his Report: "[t]he handgun taken from Duncan was recovered not just from the car in which Ojile was present when arrested, but from him backpack which was between his legs at the time of his arrest…Ojile's possession of the handgun with which Racherla was struck is corroborative of his involvement in the crime… " (Doc. 19, PageID 2643). Petitioner takes issue with the Magistrate Judge's statement that "no innocent explanation of the gun's presence in Ojile's possession is offered." (Id.). He argues this improperly shifts the burden to Petitioner to essentially prove his innocence. The Court disagrees. Innocent explanation or not, the gun with

---

[2] Petitioner lists other possible scenarios for why the items were found where he was staying. (Doc. 27, PageID 2801-02).

the victim's DNA was found between Petitioner's legs. This evidence corroborates his involvement in the robbery.

Petitioner next objects to the First District's reliance on cell phone records placing Petitioner in the area where the robbery occurred. He argues there was no evidence presented Petitioner had reason to be in that part of town. The State was not required to present evidence Petitioner did not have a reason, other than the robbery, to be in that part of town. Indeed, Petitioner could have presented such evidence to refute the evidence, but the State was not required to do so.

Finally, Petitioner argues there was not sufficient evidence presented to show he conspired with Erkins to commit an aggravated robbery. Upon review, the undersigned agrees with the Magistrate Judge this argument is frivolous given the similarities between the victims targeted at Indiana casinos, and the fact that they followed them and robbed them at gunpoint.

### 8. Summary Conclusion

Based on the foregoing, the undersigned concludes that sufficient evidence exists to support Petitioner's convictions. Accordingly, Petitioner's First Ground for Relief should be dismissed with prejudice.

### B. Second Ground for Relief

In Petitioner's Second Ground for Relief he argues he received ineffective assistance of counsel. He raises three Sub-claims, which will be addressed in turn.

The Magistrate Judge explained the governing standard for ineffective assistance of counsel found in *Strickland v. Washington*, 466 U.S. 668 (1984). Briefly, for Petitioner to succeed on a claim for ineffective assistance of counsel, he must show both that counsel's performance was deficient and the deficient performance prejudiced the petitioner. *Strickland,*

466 U.S. at 87. When determining whether a petitioner's Sixth Amendment right to effective assistance of counsel was violated, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id*. at 689, (quoting *Michel v. Louisiana,* 350 U.S. 91, 101, 76 S.Ct. 158 (1955)).

> ### 1. Sub-claim One: Failure of trial counsel to secure the testimony of an alibi witness

In Sub-claim One, Petitioner argues his trial counsel provided ineffective assistance of counsel by failing to secure the testimony of Petitioner's alibi witness to explain documented flight records she sent in which would have verified Petitioner's alibi at the time of the robbery charged in Count 3 of Case No. B-1006797. The Report recommended this Sub-claim be dismissed as procedurally defaulted. (Doc. 19, PageID 2650).

As the Magistrate Judge explained, the Sixth Circuit requires a four-part analysis to determine whether a habeas claim is precluded by procedural default. *Guilmette v. Howes*, 624 F.3d 286, 290 (6th Cir. 2010)(*en banc*) (citing *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986)). An ineffective assistance of trial counsel claim which depends on the appellate record is barred by *res judicata* if not raised on direct appeal. *State v. Perry*, 10 Ohio St.2d 175 (1967). Accordingly, if not raised on direct appeal, a petitioner waives his right to federal habeas corpus review, absent cause and prejudice. *Boyle v. Million*, 201 F.3d 711, 716 (6th Cir. 2000).

Petitioner objects to the Magistrate Judge's recommendation, arguing he properly raised this ground for relief in his 26(B) Application. He argues his appellate counsel was ineffective for not raising it on direct appeal and thus, there exists excusing cause and prejudice. (Doc. 24, PageID 2728).

As the Magistrate Judge explained, ineffective assistance of appellate counsel can excuse a procedural default only if the ineffective assistance of counsel claim has been properly raised. *Edwards v. Carpenter*, 529 U.S. 446 (2000). Petitioner did raise this claim in his 26(B) Application, and the First District denied it on the merits. (Doc. 19, PageID 2649).

The Report recommends dismissal regardless, finding the subpoenaed witness could not have established Petitioner's claimed alibi. Of importance, while the affidavit established Ms. Hawkins was a custodian of records of Continental Airlines, she did not have personal knowledge as to whether Petitioner was on either one of the flights he claimed to be on. Thus, the Report concluded that it was not ineffective assistance of counsel to fail to raise this claim on direct appeal and thus, the claim should be dismissed as procedurally defaulted.

Petitioner objects, arguing that Ms. Hawkins' testimony "would have cemented petitioner's ironclad alibi with 100% certainty." (Doc. 24, PageID 2729). As the Supplemental Report points out, however, Petitioner does not explain how Ms. Hawkins would have personal knowledge of Petitioner's whereabouts. Regardless, Petitioner argues it was still ineffective assistance of counsel to subpoena the records to establish an alibi defense, but not present her testimony. The Court disagrees. The act of subpoenaing records does not automatically require counsel to call that person as a witness. Here, because Ms. Hawkins did not have personal knowledge of whether Petitioner was on the plane, choosing not to present her testimony does not constitute ineffective assistance of counsel.

Thus, having reviewed this Sub-claim de novo, the Court agrees with the Magistrate Judge. Sub-claim one is dismissed with prejudice.

### 2. Sub-claim Two: Failure of trial counsel to introduce evidence in his possession marked "for counsel only"

Petitioner next argues he received ineffective assistance of counsel by failing to produce evidence of cell phone records that show it was physically impossible for him to have committed the robbery of Danielle Duncan. The First District addressed this issue, and concluded that the cell phone records would not have provided Petitioner an alibi defense because they do not place him in a location other than the crime scene.

The Magistrate Judge interpreted Petitioner's argument as follows: "Erkins' cellphone records place Ekrins close to the scene of the robbery at the time it happened, yet Erkins was acquitted on this count." (Doc. 19, PageID 2651) (citing Doc. 16, PageID 2552). The Magistrate Judge concluded that the First District's decision was not an objectively unreasonable application of *Strickland*, as Petitioner's trial counsel could not have known at the time he was deciding what evidence to introduce whether the trier of fact was going to find Erkins not guilty.

Petitioner objects, arguing he has established the result would have been different had counsel introduced the cell phone records. He also concedes, however, that "counsel's failure to introduce that evidence could be viewed as somewhat of a tactical and strategic decision (since records placed his co-defendant at the crime scene)." (Doc. 24, PageID 2732). And while he argues that in this case that strategy was not objectively reasonable, he fails to provide a compelling reason for this assertion.

Upon considering Sub-claim Two de novo, the Court overrules Petitioner's objections and dismisses it with prejudice.

### 3. Sub-claim Three: Failure of trial counsel to move to suppress statements made to Tanks

The undersigned agrees with the Magistrate Judge that Petitioner's argument as to Sub-claim Three relies on the same facts as Ground Eight. Accordingly, like the Magistrate Judge did, the Court addresses this Sub-claim in conjunction with Ground Eight.

### C. <u>Third Ground for Relief</u>

In Petitioner's Third Ground for Relief he argues he was deprived of due process when the prosecutor used an impermissibly suggestive identification procedure. He takes particular issue with the prosecutor showing the victim a single photograph of him (as opposed to a line up) to Weisbrod six months after the robbery, but just several weeks before trial. (Doc. 24, PageID 2737). Petitioner's objections thus attack the reliability of Weisbrod's identification of him, arguing the Magistrate Judge's R&R only addressed one of the five *Biggers* factors, and that reliability of identification goes to admissibility – not to the weight. (Doc. 24, PageID 2741-42).

The Sixth Circuit recently addressed a nearly identical argument in the case of Petitioner's co-defendant, analyzing the exact same facts present here. The Court began by explaining that the Due Process Clause obligates the exclusion of identifications if, under the totality of the circumstances, the identification procedure was so unnecessarily suggestive that it risked misidentification. *Erkins v. Chuvalas*, 684 Fed.Appx. 493, 496 (6th Cir. 2017) (citing *Howard v. Bouchard*, 405 F.3d 459, 469 (6th Cir. 2005)).

The Sixth Circuit found the Ohio court erred when it failed to address the factors in *Neil v. Biggers*, 409 U.S. 188, 200 (1972), and further did not discuss the suggestiveness of

displaying the single photograph of Erkins. *Id.* at 497. In applying the *Biggers* factors[3], the

Sixth Circuit held as follows:

> Analysis of the *Biggers* factors leads to mixed results. First, Weisbrod's opportunity to view the perpetrators weighs in favor of reliability. Although the robbery was brief and happened at night, Weisbrod testified that the area was well-lit and he got a good look at the robbers' faces, which were not concealed by their hoodies. Weisbrod told the police immediately after the robbery that he would be able to identify the robbers if he saw them again. Besides the fact that it was nighttime, Erkins has presented no evidence to counter Weisbrod's testimony that the robbers' faces were visible during the crime and identifiable.

> The second factor is the witness's degree of attention. Our cases acknowledge that "[t]here is a great potential for misidentification when a witness identifies a stranger based solely upon a single brief observation, and this risk is increased when the observation was made at a time of stress or excitement." *Wilson v. Mitchell*, 250 F.3d 388, 398 (6th Cir. 2001) (quoting *United States v. Russell*, 532 F.2d 1063, 1066 (6th Cir. 1976)). Weisbrod testified that the robbery was a "very, very traumatic experience." This factor weighs against reliability.

> The third factor, the accuracy of the initial description, also weighs against reliability. Weisbrod told the police after the robbery that the robbers were "two male blacks, both in their 20s, with black hoodies on." This generic description only partially matches Erkins, a black man who was thirty-five years old at the time. In cases in which the Supreme Court has found that the accuracy of a prior description contributed to an identification's reliability, the prior description has included further details about the criminal's body or face. *See Biggers*, 409 U.S. at 194, 200–01; *Manson*, 432 U.S. at 115. The fourth factor, the certainty of Weisbrod's in-court identification, however, weighs in favor of its reliability. Weisbrod had always stated that he would be able to identify the robbers and at trial specified that he had no doubts that Erkins was one of his assailants. Finally, the two years between the crime and Weisbrod's in-court identification weighs heavily against its reliability. In *Biggers*, the Supreme Court noted that a lapse of seven months "would be a seriously negative factor in most cases." 409 U.S. at 201.

> On balance, we think that the factors raise grave doubts about reliability given the lengthy time gap since the crime, the brief and stressed opportunity to view the perpetrators, the generic description, and the fact that Weisbrod was likely influenced by having viewed Erkins in news reports before identifying him in

---

[3] The five factors to consider in determining whether an identification was reliable under the totality of the circumstances are: the witness's opportunity to view the criminal at the time of the crime; the witness's degree of attention at that time; the accuracy of the witness's prior description of the criminal; the witness's level of certainty at the identification; and the length of time between the crime and the identification. *Neil v. Biggers*, 409 U.S. 188, 200 (1972).

court. As a federal court considering a state court's ruling for purposes of a habeas petition, however, our review is to determine whether the Ohio courts' conclusion on reliability was objectively unreasonable. The standard is a difficult one to satisfy: "A state adjudication is not 'unreasonable' 'simply because [a federal habeas court] concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Howard*, 405 F.3d at 467 (quoting *Williams*, 529 U.S. at 411) (alteration in *Howard*).

The circumstances here are not so one-sided that it was objectively unreasonable for the Ohio courts to conclude that Weisbrod's identification was reliable. The Ohio courts' conclusion that Weisbrod's testimony was reliable is buttressed by the fact that he identified Amy Hoover as the person who knocked on his door, and Hoover confessed to doing so, indicating that other parts of Weisbrod's recollection of the robberies were accurate. Under the totality of the circumstances, we cannot say that the district court improperly dismissed this ground of Erkins's habeas petition.

*Id.* at 497-98.

Unlike in *Erkins*, the Magistrate Judge in this case expressly weighed the *Biggers* factors in the Supplemental Report and concluded the Ohio court's application of the same was not objectively unreasonable. Upon review, and considering the foregoing, the Court agrees with the Magistrate Judge that Petitioner's Third Ground for Relief should be dismissed with prejudice.

### D. Fourth Ground for Relief

In his Fourth Ground for Relief, Petitioner argues the State's failure to turn over the single photograph showed to Weisbrod constituted a *Brady* violation. In the Report, the Magistrate Judge found well-taken Respondent's argument that this claim was procedurally defaulted, as Petitioner first raised it as part of his 26(B) Application, despite relying on evidence that was part of the direct appeal. However, Petitioner argues procedural default should be excused because he received ineffective assistance of counsel when his direct appeal attorney failed to raise the claim. Accordingly, the Magistrate Judge reviewed the claim through the lens

of AEDPA deference. *Harrington v. Richter*, 562 U.S. 86, 97-98, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011).

In doing so, the Magistrate Judge concluded that the photograph was inculpatory evidence not subject to *Brady v. Maryland*, 373 U.S. 83 (1963). Petitioner objects to this conclusion, arguing the photograph is "exculpatory because it is subject to suppression on the grounds that it was obtained in violation of defendant's right to be free from illegal search and seizure." (Doc. 24, PageID 2743). He also argues that despite the evidence being inculpatory, it still possesses exculpatory value and thus, was a *Brady* violation.

Upon review, the Court finds the Magistrate Judge correctly determined that the photograph was not subject to *Brady* and thus, failure to raise a *Brady* claim did not constitute ineffective assistance of counsel. The photograph, which Weisbrod identified as Petitioner, further inculpated him. In other words, the photograph was not favorable to Petitioner. Accordingly, Petitioner's Fourth Ground for Relief is without merit, and is dismissed with prejudice.

### E.      Fifth Ground for Relief

Petitioner argues in his Fifth Ground for Relief that his due process rights were violated when the prosecutor knowingly used perjured testimony of two witnesses –Tyrone Tanks and Amy Hoover – to convict him.

#### 1.      Tyrone Tanks

In the Report, the Magistrate Judge concluded that Tanks' proffered testimony was procedurally defaulted by Petitioner's failure to raise the claim on direct appeal. In his objections, Petitioner argues "[t]he appellate court incorrectly applied the 'doctrine of the law of the case'" because at the time the trial court ruled on his post-conviction motion, the appellate

court had not yet decided his direct appeal. (Doc. 24, PageID 2746-47). Upon further review, the Magistrate Judge agreed Petitioner that his chronology was accurate. (Doc. 26, PageID 2786).

Nevertheless, the Magistrate Judge concluded that despite the First District's error, the trial court correctly concluded that the Ohio doctrine of criminal *res judicata* barred a hearing on a post-conviction petition where the claims raised in the petition were raise or could have been raised at trial or on direct appeal. (Id.) (citing Findings, ECF No. 13-2, PageID 807). Because Petitioner did not show how this conclusion was an incorrect application of Ohio law, the Magistrate Judge continued to recommend this Sub-claim should be dismissed with prejudice. Petitioner continues to object, arguing that he did not accept the trial court's *res judicata* ruling by not addressing it, instead addressing the "doctrine of the law of the case." Still, however, Petitioner does not explain why his Sub-claim is not barred by *res judicata*.

Upon review, the Court agrees with the Magistrate Judge that the trial court's decision was not an unreasonable application of Ohio law and thus, this Sub-claim is dismissed with prejudice.

### 2. __Amy Hoover__

Petitioner asserts the State knowingly used Amy Hoover's perjured testimony thereby denying him a fair trial. Petitioner presented this claim on direct appeal, and the First District found his claim to be without merit, explaining that Petitioner was attacking the credibility of Hoover's testimony.

As the Magistrate Judge correctly explained, because the First District addressed this claim on the merits, Petitioner may prevail only if he can show the First District's decision was

an unreasonable application of clearly established federal law. Upon review, the Magistrate Judge determined Petitioner had failed to do so, recommending dismissal of this Sub-claim.

Petitioner objects. He takes particular issue with Hoover's testimony as it relates to Counts 2 and 3. He argues his alibi – that he was in jail at the time those crimes occurred – was sufficiently persuasive for the State to dismiss those Counts and thus, Hoover perjured herself when she testified to the contrary. However, as the Magistrate Judge points out, there is no evidence Hoover knew he was in jail at the time, or that she deliberately perjured herself. So while he argued it was impossible for him to be there during the commission of the crimes, Petitioner has not established Hoover knew it was impossible for him to be there. At best, Petitioner's explanation establishes contradictory testimony.[4] This, however, does not prove Hoover's testimony was indisputably false as is required under federal law. *See United States v. Lochmondy*, 890 F.2d 817, 822 (6th Cir. 1989).

Accordingly, upon review, the Court finds no error in the Magistrate Judge's conclusion that Petitioner's Sub-claim is without merit.

**F.      Sixth Ground for Relief**

Petitioner next argues he was denied due process when he was convicted and sentenced for conspiring to commit aggravated robbery and robbery, rather than for complicity—the crime for which he was indicted. He thus argues the trial court effectively changed its verdicts. Petitioner raised this argument on direct appeal. The First District found no error because the trial court realized its error, and put on an entry nunc pro tunc correcting its error. Thus, the First District concluded the trial court corrected a permissible clerical error.

---

[4] Petitioner argues in part that he had no control over Hoover's testimony because she was a State witness. That, however, is precisely what cross examination is for. And as the First District explained, Petitioner's counsel thoroughly cross-examined Hoover.

The Magistrate Judge concluded that Ground Six should be dismissed with prejudice because Petitioner failed to establish that correcting a clerical error is a violation of the United States Constitution. Petitioner objects, arguing that the trial court not only announced the incorrect verdict orally in court, but also journalized the same. The Court is not persuaded by Petitioner's argument.

It is clear from the record that the trial court corrected its error by way of an entry nunc pro tunc. Moreover, Petitioner's objections largely rely on his right to be indicted by a grand jury. As the Magistrate Judge correctly points out, however, the Fifth Amendment right to grand jury indictment does not apply to states. *Hurtado v. California*, 110 U.S. 516 (1884).

## G. <u>Seventh Ground for Relief</u>

In his Seventh Ground for Relief, Petitioner argues he was denied his right to confront Officer Morgan in violation of his Sixth Amendment rights – a claim the First District addressed and found was without merit. The Magistrate Judge likewise concluded that the First District's decision was not an unreasonable application of federal law because there was no testimonial statement of an absent witness. The Supplemental Report further addresses Petitioner's arguments. The Magistrate Judge concluded that Petitioner's argument that the documents themselves – Dao's Social Security card, driver's licenses, and credit card – found during the search of Petitioner's residence were not testimonial in nature because they were not created to be evidence. Rather, they were created for Tao to be used as evidence of his identity.

In his Supplemental Objections, Petitioner argues that it was not the evidence, but Officer Crock's testimony regarding where the evidence was recovered that was testimonial in nature. He argues testimony that incriminating evidence was found at all had to come from Officer Morgan – the person who found the evidence. The Court disagrees. Officer Crock

testified he was present when the evidence was found and thus, would have personal knowledge of where the evidence was found regardless of whether he was actually the one who found it. Petitioner's attorney was able to cross examine Officer Crock regarding his testimony. Importantly, as the Magistrate Judge concluded, the State did not introduce any statement of Officer Morgan at all. Accordingly, upon review, the Court finds the Magistrate Judge correctly concluded the First District's decision was not an unreasonable application of federal law. Ground Seven is dismissed with prejudice.

**H.**     <u>Eighth Ground for Relief</u>

Next, Petitioner argues he was denied his Sixth Amendment right to counsel when the State placed him in the same cell as Tanks. In the Report, the Magistrate Judge found this Ground was barred by Ohio's criminal *res judicata* doctrine. Following Petitioner's Objection that the First District incorrectly applied the law of the case doctrine to affirm the trial court's decision, the Magistrate Judge further addressed the issue to determine whether the First District's rejection of this claim was an objectively unreasonable application of *Strickland*. The Magistrate Judge concluded in the Supplemental Report that it was not, and recommended dismissal.

In his Supplemental Objections, Petitioner spends pages of briefing arguing the trial court's *res judicata* determination was in error. He argues he was "unable to fully litigate this issue on direct appeal because he needed to rely on three new evidentiary documents containing sufficient operative facts to demonstrate his claims." (Doc. 27, PageID 2817). Specifically, he argues he needed Tanks proffered statement, Tanks letter to the prosecutor, and the contents of the sealed supplement to Tanks' plea deal. Petitioner asserts that with this evidence, Petitioner would have been entitled to an evidentiary hearing and a reversal of his conviction. The Court

disagrees. Aside from his perfunctory assertion that this evidence would have provided him a "dead-bang winner," Petitioner fails to explain why his appeal would have been successful.

Upon de novo review, the Court agrees with the Magistrate Judge that dismissal of Ground Eight is warranted.

## I.      <u>Ninth Ground for Relief</u>

In his Ninth Ground, Petitioner contends his right to a speedy trial under the Sixth Amendment was violated.  In the Report, the Magistrate Judge concluded that this claim was procedurally barred because it could have been raised on direct appeal, and Petitioner did not show excusing cause and prejudice.  In his Objections, Petitioner argues only that the Court should review the claim on the merits because the State court's decision was an unreasonable application of Supreme Court precedent.  (Doc. 24, PageID 2768).  Upon review, the Court finds no error in the Magistrate Judge's conclusion that Ground Nine is procedurally defaulted, and Petitioner has not established otherwise.  Accordingly, Ground Nine is dismissed with prejudice as procedurally defaulted.

## J.      <u>Tenth Ground for Relief</u>

Finally, Petitioner argues he received ineffective assistance of counsel because his appellate counsel failed to plead assignments of error raising Grounds One, Two(A), Four, Eight, and Nine.  The Magistrate Judge concluded that this Ground should be dismissed with prejudice because Petitioner has not shown how any of the omitted assignments of error were stronger than the assignments actually raised.  In his Objections, Petitioner only incorporates arguments raised in the Grounds cited above.  Accordingly, the Court does not address this Ground separately. Petitioner's objections related to Ground Ten are overruled, and it is dismissed with prejudice.

IV.     **CONCLUSION**

Consistent with the foregoing, the Court hereby **OVERRULES** Petitioner's Objections (Docs. 24, 27) and **ADOPTS** the Report and Supplemental Report (Docs. 19, 26).   It is **ORDERED** that:

Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) is **DISMISSED WITH PREJUDICE**.

Petitioner is **DENIED** a certificate of appealability, except as follows:

1. Whether Mr. Gibson's display of photographs of all three Defendants to Michael Weisbrod was unduly suggestive;

2. Petitioner's Eighth Ground for relief.

The Court also grants a certificate of appealability on the issue of whether the crime of robbery under R.C. 2911.02(A)(1) requires proof of a weapon as raised in Sub-claim One of Ground One.

**IT IS SO ORDERED**.

_s/Michael R. Barrett_____
Michael R. Barrett, Judge
United States District Court